IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK BUTLER,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVL ACTION NO. 22-CV-3252 |
| | : | |
| DAVID PENCHISHEN, *et al.*,<br>    Defendants. | : | |

**MEMORANDUM**

**SÁNCHEZ, C.J.**                                                                                             September 26, 2022

    Plaintiff Patrick Butler, a prisoner incarcerated at the Northampton County Prison ("NCP"), filed this civil rights action against several government officials based on the conditions of his confinement. Butler also seeks leave to proceed *in forma pauperis*. The Court will grant Butler leave to proceed *in forma pauperis* and dismiss his claims except for his Free Exercise claim, Equal Protection claim, and RLUIPA claim against certain Defendants based on NCP's alleged failure to provide Jumu'ah services.

**I.    FACTUAL ALLEGATIONS**[1]

    The Complaint names the following Defendants: (1) Warden David Penchishen; (2) Director of Corrections James Kostura; (3) Chris Gebhardt, identified as the Religious Program Coordinator; (4) Northampton County; (5) Deputy Warden Mark Bartholomew; (6) Jodi Ruggerio; (7) Lamont Miller, identified as a County Executive; (8) PrimeCare Medical Services ("PrimeCare"); and (9) Shane Doe, identified as a "Primecare Worker."[2] (Compl. at 2-5.) Butler

---

[1] The facts set forth in this Memorandum are taken from the Complaint and attached exhibits. In citing these materials, the Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Butler sued the individual Defendants in both their individual and official capacities. To the extent these Defendants are sued in their official capacities, any such claims are dismissed as

raises constitutional claims based on the conditions in which he has been and is currently confined at NCP.  The Complaint indicates that Butler was at times a pretrial detainee and at times a convicted and sentenced inmate during the relevant events.  (*Id*. at 5.)

First, Butler raises claims based on having been housed in a cell in June 2022 that was "exposed to welding fumes and sparks which poured through [his] cell vent directly and into [his] sink."  (*Id*. at 7.)  Butler alleges that he began to experience "a sore throat and mouth soreness, shortness of breath, difficulty breathing, coughing flem [sic], headaches, dizziness and insomnia" as a result of exposure to the fumes and sparks.  (*Id.*)  He claims that he complained to two correctional officers, who instructed him to write a grievance, which he did.  (*Id.*)  He also alleges that he did not receive any medical treatment for three weeks despite filing a "medical grievance" and then, only received Tylenol.  (*Id.*)  Butler alleges that his voice has changed and that he continues to experience symptoms from the exposure, including headaches, shortness of breath, and a cough with phlegm.  (*Id.*)

Second, Butler, who is Muslim, alleges that NCP does not "hold Jumu'ah, classes for any religious programming," even though attending Jumu'ah is "an obligatory act in [his] religion."[3]

---

duplicative of the claims against their employers, who are also sued as Defendants.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

[3] Jumu'ah is a weekly Muslim congregational service that must be held every Friday after the sun reaches its zenith and before afternoon prayer.  *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 345 (1987).

(*Id.*)  He claims that NCP nevertheless holds "parenting classes, GED classes, and LEAP (community-re-entry programs)." (*Id.*)  When Butler raised the issue with Defendants Warden Penchishen and Gebhardt, the Religious Program Coordinator, he was told the classes were not being held because of COVID-19. (*Id.*)  Butler apparently tried to obtain a "spiritual advisor visit" from an Imam, apparently to coordinate Jumu'ah, but it appears that did not occur. (*Id.*)

Third, Butler alleges that he was retaliated against in various respects for filing grievances about the absence of Jumu'ah classes. (*Id.*)  Butler claims that a day after he appealed a grievance, he "was suddenly taken off [his] no soy diet," which he requires because soy gives him an irritable bowel and excessive gas and affects "the state of purity needed to pray." (*Id.*)  Butler alleges that he asked Defendant Shane Doe, identified as a "medical worker," to put him back on a "no soy" diet and Shane directed Butler to Defendant Gebhardt. (*Id.*)  Gebhardt responded to Butler's inquiry by directing him back to the medical department. (*Id.*)  Thereafter, Butler contends that he filed another "medical grievance" to which he did not receive a response, and another, which was met with the same lack of response. (*Id.*)  He also alleges that he wrote letters to the Jail Advisory Board, the County Executive, the Director of Corrections, and his State Representative to make them aware of "these issues." (*Id.*)

Butler also appears to be alleging that he was denied the ability to participate in programming and prevented from obtaining a job in the kitchen in retaliation for filing grievances. (*Id.* at 7, 10.)  He also claims that, as a result of the retaliation, he "started to receive [his] legal mail without the envelope and would not be given the legal mail book log to sign to insure [his] legal mail is opened in [his] presence." (*Id.* at 7, 10.)  Butler alleges that at some point he spoke to Jodi Ruggerio, who is in charge of the Jail Advisory Board, and explained "all of this to her" but that three weeks passed and "nothing has changed." (*Id.* at 7, 11.)

Based on these allegations and exhibits attached to the Complaint reflecting the grievances and complaints he made about the conditions at NCP, (*id.* at 15-22), Butler brings claims pursuant to 42 U.S.C. § 1983 for retaliation, violation of his free exercise rights, violation of his Eighth Amendment and due process rights, and violation of his equal protection rights.[4] (*Id.* at 3.) Butler also brings claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and tort claims under state law. (*Id.*) Butler seeks "immediate reinstatement of Jumu'ah," "equal treatment of all faiths," and damages. (*Id.* at 6.)

## II.     STANDARD OF REVIEW

Butler is granted leave to proceed *in forma pauperis* because he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

---

[4] Butler cites the Fifth Amendment, (Compl. at 3), which applies to the federal government, but there is no plausible basis for a Fifth Amendment claim based on his allegations. *Hall v. Nisbit*, No. 21-2139, 2022 WL 910339, at *2 (3d Cir. Mar. 29, 2022) (*per curiam*) ("The Fifth Amendment Due Process Clause applies to federal officials, and none of the Appellees are.") (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)).

[5] However, as Butler is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Butler is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

#### A. Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating

5

the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

To plead a basis for liability against a municipal entity under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases). The same standard applies to medical contractors such as PrimeCare that contract to provide medical services at county jails. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

### 1. Conditions of Confinement Claims

Butler brings claims for deliberate indifference based on being housed in a cell that exposed him to fumes and sparks from welding, and claims for deliberate indifference to medical needs based on the failure to treat symptoms he experienced from exposure to the welding. (Compl. at 7.) The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs similar challenges raised by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted and sentenced prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Similarly, to state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Butler has failed to allege that any of the individual Defendants acted with deliberate indifference by housing him in the cell that exposed him to welding sparks, by failing to act upon awareness of any risk from that exposure, or in denying him medical care. To the extent Butler is attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any

event, would not establish the requisite personal involvement to establish liability. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (*per curiam*) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Burk v. Budd*, No. 18-4702, 2019 WL 3765621, at *4 (E.D. Pa. Aug. 9, 2019) (dismissing claims against defendant based on supervisory liability where "[t]he only fact Burk alleges regarding [the defendant's] personal involvement is that Burk sent letters to [the defendant], but never heard back from him"). Nor has Butler stated a plausible claim against Northampton County or PrimeCare in connection with these events because he has failed to allege that a policy or custom of either of these entities led to the claimed constitutional violations. Accordingly, Butler's constitutional claims based on his exposure to welding and the denial of medical care for symptoms he experienced as a result of the welding are dismissed for failure to state a claim against any of the Defendants.

### 2. Retaliation Claims

Butler brings retaliation claims based on allegations that he was retaliated against in various respects after he filed a grievance and/or appeal of a grievance by being removed from his "no soy" diet, being denied access to programming, and failing to properly receive his legal

mail.[6]  To state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  A prisoner's filing of a grievance constitutes constitutionally protected conduct.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *Id*.

Most of Butler's allegations surrounding the claimed retaliation are not tied to any of the individual Defendants and, thus, do not amount to plausible retaliation claims.[7]  *See Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014) (*per curiam*) ("[M]ere notification of a grievance does not allege sufficient personal involvement because it does not establish that the Defendants personally directed or acquiesced in the retaliation."); *Burk*, 2019 WL 3765621, at *4 (dismissing claims against defendant where "[t]he only fact Burk alleges regarding [the defendant's] personal involvement is that Burk sent letters to [the defendant], but never heard back from him").  Although Butler alleges that he communicated with Defendants Shane Doe and Gebhardt after he was removed from his no soy diet, Butler does not allege that either of these Defendants was responsible for removing him from the diet in the first place,

---

[6] The Court does not understand Butler to be pursuing claims apart from retaliation based on these events.

[7] Nor has Butler alleged that a policy or custom of Northampton County or PrimeCare was responsible for the claimed retaliation, so any retaliation claims against those Defendants fail as well.

10

which is the allegedly retaliatory act, or that they had reason to know of the grievance or appeal that allegedly triggered the retaliation. Absent clearer factual allegations here, Butler has failed to state a plausible retaliation claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

### 3. Free Exercise and Equal Protection Claims

Butler's Free Exercise and Equal Protection claims pertain to his allegation that NCP does not offer Jumu'ah services so that Muslim inmates such as himself can exercise a tenet of their faith. The First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone*, 482 U.S. at 348 ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). "[O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). There are four factors to consider in the *Turner* analysis:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it . . . . A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates . . . . A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally . . . . Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (alterations in original). The *Turner* analysis is equally applicable to equal protection claims in this context.[8] *DeHart*, 227 F.3d at 61 ("DeHart cannot obtain relief if the difference between the defendants' treatment of him and their treatment of Jewish inmates is 'reasonably related to legitimate penological interests.'"); *Williams v. Sec'y PA Dep't of Corr.*, 541 F. App'x 236, 239-40 (3d Cir. 2013) (*per curiam*) ("Williams's free exercise and equal protection claims required him to prove that defendants' conduct was not 'reasonably related to legitimate penological interests' under the four factors set forth in *Turner*."). However, this analysis does not apply when a prisoner does not allege "that there is a prison policy impinging on his First Amendment rights." *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012) (*per curiam*). Additionally, "[i]n the prison context, a central First Amendment inquiry is 'whether the inmate has alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice.'" *Shelley v. Metzger*, 832 F. App'x 102, 104 (3d Cir. 2020) (*per curiam*) (quoting *Fraise v. Terhune*, 283 F.3d 506, 518 (3d Cir. 2002)).

---

[8] "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiffs pursuing an equal protection claim must allege that they were purposefully discriminated against, in that "they received different treatment from that received by other individuals *similarly situated*." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (emphasis in original). At this early stage of the litigation, the Court assumes, without deciding, that Jumu'ah classes are similarly situated to the other classes mentioned in the Complaint. *See Young v. Beard*, No. 04-2211, 2007 WL 339031, at *15 (E.D. Pa. Jan. 31, 2007), *aff'd*, 284 F. App'x 958 (3d Cir. 2008) (where "religious bands [could] rehearse more frequently than secular ensembles" and the prison "engage[d] in this disparate treatment intentionally" thereby "showing intentional, disparate treatment of similarly situated persons, Plaintiff has stated an equal protection claim."); *Abdul Jabbar-Al Samad v. Horn*, 913 F. Supp. 373, 376 (E.D. Pa. 1995) ("Civic and religious prison groups are similarly situated for the purpose of Equal Protection analysis, so the Fourteenth Amendment applies.").

Liberally construing the Complaint, the Court understands Butler to be alleging that NCP does not offer Jumu'ah classes for Muslim inmates, allegedly because of COVID-19, even though it offers other secular classes to inmates. Butler alleges that this practice violates his free exercise and equal protection rights because attending Jumu'ah is required by his religious faith and Jumu'ah is being treated differently than other classes. At this early stage of the litigation, the Court will direct service of this claim on Northampton County, Warden Penchishen, and Religious Program Coordinator Gebhardt for a responsive pleading.[9]

### B. RLUIPA Claims

Butler also brings claims under RLUIPA based on the lack of Jumu'ah services at NCP. "Congress enacted RLUIPA . . . 'in order to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)); *see* 42 U.S.C. § 2000cc, *et seq.* The relevant portion of RLUIPA "states that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the government demonstrates that the burden is 'in furtherance of a compelling governmental interest" and is 'the least restrictive means of furthering that . . . interest.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (quoting 42 U.S.C. § 2000cc-1(a)). "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to

---

[9] Butler's allegations do not suggest that any other Defendants were meaningfully involved in the decision not to provide Jumu'ah services at NCP. To the extent Butler intended to bring these claims against other Defendants based on grievances they handled or letters he wrote to them, he has not adequately alleged their personal involvement so as to state a plausible claim against them.

receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280 (capitalization in original). RLUIPA does not provide a basis for claims against individual officials in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

As noted above, Butler alleges that he has been prevented from exercising his sincerely held belief that he must attend Jumu'ah services because such services are not offered at NCP. At this early stage of the litigation, the Court will direct service of this claim on Northampton County for a responsive pleading. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 117 (3d Cir. 2017) (*per curiam*) ("The feasibility of a religious accommodation usually is a fact-intensive inquiry"). Any RLUIPA claims for damages or against individual Defendants will be dismissed with prejudice.

### C.  State Law Claims

Butler brings state law tort claims, apparently for medical malpractice and intentional infliction of emotional distress ("IIED"). (Compl. at 3.) "For a party to prevail in a negligence action, ordinary or professional, the elements are identical: the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). "A critical feature of a medical malpractice action is that it turns on questions involving medical judgment. A complaint sounds in malpractice when the conduct at issue constituted an integral part of the process of rendering medical treatment." *Doe v. Hosp. of Univ. of Pennsylvania*, 546 F. Supp. 3d 336, 344 (E.D. Pa. 2021) (internal quotations omitted). "[A]lthough the basic elements of both causes of action are the same, a medical malpractice claim is the "unwarranted departure from generally accepted

standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Merlini*, 980 A.2d at 506; *see also Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (2003) ("[T]o prevail in a medical malpractice action, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." (internal quotations omitted)).

"To establish an IIED claim under Pennsylvania law, a plaintiff must show that (1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe." *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 826-27 (E.D. Pa. 2017); *see also Miller v. Comcast*, 724 F. App'x 181, 182 (3d Cir. 2018) (*per curiam*). Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" meets this standard. *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). "[C]ourts in this district have repeatedly found that as reprehensible as deliberate discrimination can be, discrimination alone does not meet the extreme and outrageous conduct standard necessary to state a claim for IIED." *Doe*, 270 F. Supp. 3d at 827 (internal quotations and alterations omitted).

Butler's state law tort claims are not adequately pled. It is not clear whom these claims are brought against nor is it clear to which events they pertain. Absent clearer allegations, the Court concludes that Butler has failed to adequately state a medical malpractice or IIED claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not

nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Butler leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) except for his Free Exercise claim and Equal Protection claim against Northampton County, Penchishen and Gebhardt, and his RLUIPA claim against Northampton County based on the failure to provide Jumu'ah services.  Butler's RLUIPA claims against individual Defendants are dismissed with prejudice and the balance of the Complaint will be dismissed without prejudice. Butler will be given the option of proceeding at this time on his Free Exercise, Equal Protection and RLUIPA claims or filing a comprehensive amended complaint.  An appropriate Order follows, which provides further guidance to Butler about his options for proceeding.

**BY THE COURT:**

      **/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**